IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JE'RI SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-03341-CV-S-WBG |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION
DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Je'ri Smith's appeal of Defendant Commissioner of Social Security's final decision denying her application for supplemental security income. For the following reasons, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings.

I.     **BACKGROUND**

Plaintiff was born in 1970, has a ninth-grade education, and previously worked as a certified medication technician and home attendant. R. at 23, 43, 45-47, 66, 223, 225, 243, 250. In September 2016, Plaintiff applied for supplemental security income claiming she became disabled on July 9, 2016. R. at 225-30. Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 150-57, 160-62.

In December 2018, a hearing was held before ALJ Mary J. Leary. R. at 36-73. On March 11, 2019, the ALJ issued her decision, finding Plaintiff was not disabled. R. at 10-25. The ALJ concluded Plaintiff had the following severe impairments: "history of degenerative disc disease of the lumbar spine, spinal stenosis, cervical osteoarthritis with radiculopathy, and cervical kyphosis;

SLAP lesion of the right shoulder; peripheral neuropathy; bipolar disorder; generalized anxiety disorder; posttraumatic stress disorder[;] dependent personality disorder; and cannabis dependence." R. at 12. The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), except Plaintiff also was limited to the following:

> occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, vibration, and hazards such as dangerous machinery and unprotected heights; occasional reaching overhead with right upper extremity; is able to understand, remember, and carry out simple instructions consistent with routine, repetitive unskilled work at SVPl and SVP2; can tolerate occasional contact with coworkers and supervisors, but no contact with the general public, in a setting where she can complete tasks relatively independently; can perform simple decision-making related to basic work functions, and can tolerate minor, infrequent changes within the workplace; and would likely be off task 5 percent of the work day.

R. at 15.

As set forth in her decision, the ALJ asked a vocational expert ("VE") during the December 2018 hearing if jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and the above-identified RFC. R. at 24, 66-68. The VE testified such an individual could not return to Plaintiff's past relevant work but would be able to work as a swatch clerk, packing header, and blade balancer. R. at 23-24, 67-68. The ALJ then asked if the same hypothetical person would be able to work if she was off task fifteen percent of the time. R. at 70. The VE stated an individual persistently off task fifteen percent of the time would not able to sustain employment. *Id.* Finally, the ALJ inquired if the same hypothetical individual could sustain employment if the individual had to miss work at least one day per month. R. at 70-71. The VE testified such an individual would not able to sustain employment. R. at 71.

Based upon her review of the record, her RFC determination, and the VE's hearing testimony, the ALJ determined Plaintiff could work as a swatch clerk, packing header, and blade

balancer. R. at 24. The ALJ found Plaintiff was "not disabled." R. at 24. Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied her appeal. R. at 1-3. Plaintiff now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

This Court must affirm the Commissioner's decision "if substantial evidence in the record as a whole supports [the] decision." *Hilliard v. Saul*, 964 F.3d 759, 761-62 (8th Cir. 2020) (citation omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). If substantial evidence supports the Commissioner's decision, this Court may not reverse the Commissioner's decision if substantial evidence also "would have supported a contrary outcome," or this Court "would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted).

## III. DISCUSSION

Plaintiff argues this matter should be remanded because the ALJ erred in affording little weight to her treating mental health provider's opinion, improperly relied on a state agency psychological consultant's opinion, failed to properly account for Plaintiff's mental limitations, and did not cite sufficient evidence to support the RFC.[1]

### A. Weight Afforded to Medical Opinions

The record includes two opinions about Plaintiff's mental limitations. One opinion was given by a state agency psychological consultant, J. Edd Bucklew, Ph.D., and the other opinion was provided by Plaintiff's treating therapist, Jennifer Hollis, LCSW, MSW.

---

[1] Plaintiff's appeal to this Court solely concentrates on her mental limitations and does not raise any issue regarding the physical limitations in the ALJ's RFC.

### (1) Edd Bucklew, Ph.D.

In January 2017, Dr. Bucklew, a state agency psychological consultant, provided his opinion on Plaintiff's mental RFC. R. at 145-46. Based solely on his review of Plaintiff's medical records, Dr. Bucklew opined Plaintiff was moderately limited[2] with regard to carrying out detailed instructions; maintaining attention and concentrating for extended periods; working in coordination with or in proximity to others without being distracted by them; interacting with the general public; getting along with coworkers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. *Id*. Dr. Bucklew also determined Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruption from psychological symptoms but found Plaintiff could work if she was "limited to less complex tasks." *Id*. In all other respects, Dr. Bucklew found Plaintiff was not significantly limited. *Id*.

The ALJ afforded "significant weight" to Dr. Bucklew's opinion because "he has a thorough amount of understanding of the disability program and the evidentiary requirements and is familiar with the other information in a claimant's case record." R. at 20-21. The ALJ also noted Dr. Bucklew's opinion was "supported by the objective clinical findings and medical treatment notes." R. at 21. Although not mentioned by the ALJ, Dr. Bucklew's opinion, which was rendered nearly two years before the hearing in this matter, was based on limited medical evidence.[3]

---

[2] The term "moderately limited" is not defined in Dr. Bucklew's report.

[3] It appears Dr. Bucklew's opinion on Plaintiff's mental RFC was based on medical records prior to the alleged disability onset date (July 9, 2016) and, at most, five mental health records between July 9, 2016, and December 15, 2016. R. at 139-40, 145-46.

### **(2)** **Jennifer Follis, LCSW, MSW**

From September 2016 through December 2018, Jennifer Follis, LCSW, MSW, provided therapy to Plaintiff. R. at 21, 343-62, 374-78, 419-22, 639-44, 656-67, 673-88, 695-99, 824-27, 839-46, 1212-16. In April 2018, Follis executed a Medical Source Statement – Mental ("MSS") for Plaintiff. R. at 766-67. Based on her clinical findings, diagnoses,[4] and treatment of Plaintiff, Follis opined Plaintiff's ability to work in coordination with or proximity to others without being distracted by them was "extremely limited."[5] *Id*. In addition, Follis found Plaintiff was "markedly limited"[6] in her ability to understand, remember, and carry out instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruption from psychological symptoms; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. *Id*.

Follis also determined Plaintiff was "moderately limited"[7] in her ability to remember locations and work-like procedures, sustain an ordinary routine without special supervision, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and travel to unfamiliar places or use public transportation. *Id*. In Follis's

---

[4] Follis identified Plaintiff's diagnoses as bipolar disorder, post-traumatic stress disorder, and generalized anxiety disorder. R. at 766.

[5] In the MSS, "extremely limited" is defined as "[i]mpairment level precludes useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." R. at 766.

[6] In the MSS, "markedly limited" is considered "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interfere[ ] with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." R. at 766.

[7] In the MSS, "moderately limited" means "[i]mpairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." R. at 766.

opinion, Plaintiff's mental conditions would cause her to miss at least four days of work per month, and she would likely be "off task" at least twenty-five percent of the time due to her mental health symptoms. *Id.*

The ALJ afforded "little weight" to Follis's opinion because Follis did not make a "function by function assessment" of Plaintiff's mental RFC, Follis's treatment notes and other treating providers' records do not support the "severe level of dysfunction" opined by Follis, and the record showed Plaintiff engaged in "normal activities of daily living." R. at 21. As a social worker, Follis is not considered an "acceptable medical source" under the Social Security regulations. 20 C.F.R. § 404.1502(a). Nevertheless, the ALJ was required to consider Follis's opinion "using the same factors" that are utilized when evaluating an opinion from an acceptable medical source. § 404.1527(f)(1). That is, when evaluating Follis's opinion, the ALJ was required to consider the examining relationship; treatment relationship (including length of relationship, frequency of examination, and the nature and extent of the treatment relationship); supportability; consistency; and specialization. § 404.1527(c).[8] The ALJ purportedly considered whether Follis's opinion was supported and consistent with the record. *See* R. at 21. But the other factors, particularly Follis's examining relationship, treatment relationship, and specialization, are absent from the ALJ's discussion of Follis's opinion. *Id.*

In addition, the bases for the ALJ discounting Follis's opinion are not supported by the record. First, the ALJ indicated Follis failed to provide a function-by-function analysis. R. at 21.

---

[8] The regulations anticipate the possibility that, "an opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of an acceptable medical source . . . ." 20 C.F.R. § 404.1527(f)(1). The regulations further advise, "it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id.*

But Follis expressly opined on Plaintiff's ability to, among other things, understand, remember, and carry out instructions, and respond to supervisors, coworkers, and work pressures. R. at 766-67.[9] When determining a person's mental RFC, the ALJ is to "assess the nature and extent of your mental limitations and restrictions." 20 C.F.R. § 404.1545(c). Mental limitations pertain to "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." *Id*. Thus, Hollis's opinion addressed the functions the ALJ was required to assess when determining Plaintiff's mental RFC.

Second, contrary to the ALJ's finding, Follis's treatment notes support her opinion. Follis's notes reveal Plaintiff would experience some improvement in symptoms but her symptoms, at times, would worsen. Follis frequently noted Plaintiff's stress, anxiety, panic, and sadness had increased; she needed a medication adjustment; her affect reflected anxiety and sadness; she had increased mood swings; her nightmares were more frequent; and she had difficulties with eating and/or sleeping. *See* R. at 353-56, 374, 420, 639, 656, 673, 824, 839, 843, 1212.

In addition, at least one other medical provider's treatment records are fully consistent with, and support, Follis's opinion. From September 2016 through October 2018, Plaintiff was seen on ten occasions by Dr. Angela Olomon, a psychiatrist. At each appointment, Dr. Olomon made at least one (and oftentimes, many) of the following observations about Plaintiff: thought process was slow and concrete, thought content was obsessive, remote memory was poor, mood was dysphoric and anxious, affect was blunted and flat, thought process was rapid and ruminative, and speech was pressured. *See* R. at 332-36, 348-52, 363-67, 606-10, 628-33, 668-72, 705-09, 781-

---

[9] Follis specifically assessed three function categories related to understanding and memory, eight function categories related to sustained concentration and persistence, five function categories related to social interaction, and four function categories related to adaptation. R. at 767.

84, 789-92, 835-38. Dr. Olomon's observations, however, are not referenced by the ALJ. *See* R. at 21.

Instead, to discount Follis's opinion, the ALJ pointed to a medical record from 2016, two medical records from 2017, and a few medical records from 2018. R. at 21. Three cited medical records seem to indicate improved symptoms. The July 9, 2016 medical record cited by the ALJ, however, involved Plaintiff's emergency room visit for abdominal pain and nausea. R. at 728. It was during the "physical" examination that Plaintiff was observed as having a "normal mood and affect." R. at 729. Regarding the remaining records cited by the ALJ, it is unclear which particular records she cited. This is because the ALJ referred to three exhibits in their entirety. R. at 21. While one exhibit is only thirteen pages (C17F), the other two exhibits (C13F and C11F) are 159 pages and 85 pages, respectively. Regardless, these medical records span over more than two years and do not establish Plaintiff's mental limitations are significantly less restrictive than the limitations opined by Follis.

The ALJ selectively choosing medical records to support her decision to discount Follis's opinion is particularly troublesome given Plaintiff's severe mental health impairments. When a claimant suffers from mental disorders, as is the case here,[10] the Eighth Circuit directs Defendant to "take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citation and quotation omitted). "Given the unpredictable course of mental illness, '[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse.'" *Id.* (quoting *Andler v. Chater,* 100 F.3d 1389, 1393 (8th

---

[10] The ALJ concluded Plaintiff's severe mental impairments are bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, and dependent personality disorder. R. at 12.

Cir. 1996)). While Plaintiff had days or periods of time where her mental health symptoms were less severe, the record demonstrates her symptoms oftentimes were worse than the ALJ suggested.

Finally, the ALJ afforded little weight to Follis's opinion because Plaintiff engaged in normal daily activities. R. at 21. The ALJ pointed to Plaintiff caring for three children and being "alone" when "her boyfriend was gone for two weeks at a time working." *Id.*[11] The record includes three instances (between April 2018 and December 2018) where Plaintiff mentioned she helped take care of three kids, who were relatives of a friend. R. at 824, 839, 1212. During the hearing, Plaintiff testified the kids would "occasionally . . . come over and spend the night." R. at 53-54. Infrequently taking care of three kids – without knowing any information as to what that care entails – does not demonstrate normal daily activities.

Regarding the reference to Plaintiff being alone for two weeks at a time while her boyfriend worked, the ALJ points to one record – a clinic progress note from February 2017 wherein Plaintiff indicated her "sadness and anxiety are due to her boyfriend getting a new job and being gone 2 weeks at a time." R. at 17, 709. But the record does not establish Plaintiff was home alone during that time, and if so, whether she was able to care for herself and/or received assistance from others. Moreover, Plaintiff testified at the hearing that she and her boyfriend no longer lived together. R. at 50. Thus, it is unclear why Plaintiff's boyfriend's absence – at least since the time of the hearing – was relevant to the severity of her limitations. Additionally, the ALJ did not consider that

---

[11] Earlier in her decision, the ALJ pointed out Plaintiff's "leisure activities include reading and arrowhead hunting." R. at 20. But the record cited by the ALJ establishes Plaintiff "can't read for more than 15 minutes" and "quit arrowhead hunting [because she] can't walk that far or look down that long." R. at 264. Additionally, during the hearing, Plaintiff testified she had not been arrowhead hunting in at least three years. R. at 50. She also testified she had not read "in months." R. at 49. Similarly, the ALJ stated Plaintiff can "travel independently [and] go shopping." R. at 20. But that activity is limited and exacerbates Plaintiff's condition; Plaintiff stated she drove short distances once a week, and although she can go out alone, "it causes anxiety." R. at 263.

Plaintiff, who suffers from mental illness, may structure her life "in such a way as to minimize stress and reduce [her] signs and symptoms." *Hutsell*, 259 F.3d at 711 (citation omitted).

Upon remand, the ALJ must consider the examining relationship that Follis had with Plaintiff; the treatment relationship (including length of relationship, frequency of examination, and the nature and extent of the treatment relationship); the supportability and consistency of Follis's opinion; and Follis's specialization. After considering these factors, the ALJ must set forth good reasons for the weight afforded to Follis's opinion.[12] If, on remand, the ALJ chooses to rely again on Dr. Bucklew's opinion when reaching her decision, the ALJ shall provide authority for relying on a medical opinion based on limited medical evidence and rendered more than two years before the ALJ issued her decision, and how that opinion constitutes substantial evidence. Furthermore, if the ALJ decides to afford greater weight to Dr. Bucklew's opinion than the weight she affords Follis's opinion, the ALJ must cite those portions of the record establishing Dr. Bucklew's opinion is "supported by better or more thorough medical evidence." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (citations omitted).

### B. The ALJ's RFC

In a related argument, Plaintiff contends the ALJ's RFC should have included greater limitations in mental functioning. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Because Plaintiff's RFC is a medical question, "an ALJ's assessment of it must be

---

[12] If, on remand, the ALJ relies on Plaintiff's daily activities to discount a medical opinion, the ALJ must address the extent of and limitations to those activities.

supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*.

As best the Court can discern, the ALJ's RFC is based solely on Dr. Bucklew's opinion. In addition to Dr. Bucklew's opinion being based on limited medical evidence, Dr. Bucklew was a non-examining consultant. As such, his opinion cannot constitute substantial evidence. *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (stating "the opinion of a non-examining consulting physician" is "not 'considered substantial evidence in the face of the conflicting assessment of a treating physician.'") (citation omitted); *Laurer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001) (finding the opinion of a consulting physician who examines a claimant once generally "is not considered substantial evidence, especially if, as here, the treating physician contradicts the consulting physician's opinion.") (citation omitted). Because the ALJ's RFC appears to be based solely on Dr. Bucklew's opinion, the RFC is not supported by substantial evidence. Upon remand, the ALJ must set forth an RFC that accurately reflects Plaintiff's limitations and shall identify the medical evidence supporting those limitations. The medical evidence cannot consist of a non-examining consultant's opinion.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision. Accordingly, the Commissioner's decision is reversed, and the matter is remanded for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: February 17, 2021                      */s/ W. Brian Gaddy*
                                             W. BRIAN GADDY
                                             UNITED STATES MAGISTRATE JUDGE